JUSTIN D. HEIDEMAN (USB #8897)
CORWIN D. BENNETT (USB #17563)
**HEIDEMAN & ASSOCIATES**
2696 N. University Ave. Suite 180
Provo, Utah 84604
Tel: (801) 472-7742
Fax: (801) 374-1724
Email: jheideman@heidlaw.com
        cbennett@heidlaw.com
*Attorney for Plaintiffs*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

## IN THE FOURTH JUDICIAL DISTRICT COURT, IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| MARY TINCHER, an individual,<br><br>and<br><br>KENNETH TINCHER, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SKYWEST, INC., a Utah corporation, KATHY MAKASIAN, an individual, VERNON SMITH, an individual, DONTAY RILEY, an individual, and LAURA NELSON, an individual,<br><br>Defendants. | **AMENDED COMPLAINT**<br><br><br><br><br><br><br>Civil No. 230401865<br><br>Judge: Jennifer A. Mabey<br><br>Discovery Designation: Tier 3 |

COMES NOW, Plaintiffs MARY TINCHER ("M. Tincher") and KENNETH TINCHER ("K. Tincher") (collectively "Plaintiffs"), by and through the undersigned counsel of the law firm of HEIDEMAN & ASSOCIATES, and hereby complains and alleges against Defendants SKYWEST, INC. ("SkyWest"), KATHY MAKASIAN ("Makasian"), VERNON SMITH ("Smith"), DONTAY RILEY ("Riley") and LAURA NELSON ("Nelson") as follows:

### PARTIES, JURISDICTION, AND VENUE

1



1. Plaintiff MARY TINCHER is an individual, and at all relevant times was a resident of the City of Lehi, State of Utah.

2. Plaintiff KENNETH WADE TINCHER is an individual, and at all relevant rimes was a resident of the City of Lehi, State of Utah.

3. Defendant SkyWest is a corporation organized and existing under the laws of the State of Utah, with its principal place of business located in Saint George, Utah.

4. Defendant Makasian is an individual, and upon information and belief at all relevant times was a resident of California.

5. Defendant Smith is an individual, and at all relevant times was a resident of Utah.

6. Defendant Riley is an individual, and upon information and belief at all relevant times was a resident of Illinois.

7. Defendant Nelson is an individual, and at all relevant times was a resident of Utah.

8. Jurisdiction is proper in this Court pursuant to Utah. Code Ann. § 78A-5-102.

9. Venue is proper in this Court pursuant to Utah Code Ann. §§ 78B-3-304 and 78B-3-307.

### DISCOVERY TIER DESIGNATION

10. Plaintiffs' damages will be proven at trial, but are estimated to be not less than $700,000. Accordingly, pursuant to Utah R. Civ. P. 8(a) and 26(c)(3), the amount in controversy in this action make this a "Tier 3" case.

//

### GENERAL ALLEGATIONS

11. As a child, M. Tincher was diagnosed with dyslexia and Attention-Deficit Hyperactivity Disorder ("ADHD".

12. Consequently, M. Tincher participated in specialized schooling and curriculum programs to accommodate her disability.

13. Notwithstanding M. Tincher's disability, M. Tincher was able to complete her education and such training as was necessary to become employed as a flight attendant for commercial airlines.

14. M. Tincher is able to perform the essential functions of her work as a flight attendant, with reasonable accommodation of M. Tincher's disability.

15. Particularly, M. Tincher became employed as a flight attendant by Defendant SkyWest.

16. Further, M. Tincher provided consistent, diligent, effective, and specially recognized service to Defendant SkyWest for a period of more than five (5) years.

17. M. Tincher was eventually elevated in the position with SkyWest, and was named an InFlight Lead Instructor.

18. Throughout the course of her employment, M. Tincher disclosed her disability to Defendant SkyWest.

19. M. Tincher requested that Defendant SkyWest grant M. Tincher reasonable accommodation regarding M. Tincher's disabilities in both training and job performance as a flight attendant.

20. Moreover, M. Tincher requested that Defendant SkyWest grant M. Tincher reasonable accommodation of M. Tincher's disabilities in her training and job performance as an InFlight Lead Instructor.

21. Notwithstanding M. Tincher's request for reasonable accommodation, Defendant SkyWest failed or refused to grant M. Tincher reasonable accommodation for her disability, and in fact offer

no accommodations at all.

22. Despite SkyWest's failure, M. Tincher executed all of her duties receiving numerous positive evaluations. On or about October 11, 2022, M. Tincher, pursuant to her employment requirements, attended a SkyWest Teams meeting.

23. The Teams meeting was held remotely, via a video conferencing application.

24. The Teams meeting was recorded by Defendants Makasian and Smith.

25. M. Tincher attended the meeting via a computer at Plaintiffs' home.

26. Other SkyWest employees, including but not limited to Defendants Makasian and Smith attended from various other locations, not the Plaintiffs' home, via other electronic devices.

27. During the meeting, Defendant Smith made multiple statements about M. Tincher which were false, hostile, offensive, belittling, and detrimental of M. Tincher's character and reputation for the performance of her duties.

28. Defendant Smith stated and implied knowledge of facts to support his statements.

29. The intended business of the Teams meeting was fully conducted and completed during the scheduled time by Defendants Makasian and Smith.

30. When the business of the Teams meeting was completed, the Teams meeting was adjourned, and SkyWest employees exited the video conference by logging out of the video call.

31. M. Tincher, likewise, sought to log out of the video call.

32. Specifically, M. Tincher selected a button, the apparent and labeled purpose of which was to leave the meeting.

33. M. Tincher then turned away from her computer and left the room.

34. M. Tincher walked into the next room, which was her private bedroom.

35. M. Tincher took with her an electronic device that upon information and belief remained connected wirelessly to M. Tincher's computer.

36. M. Tincher did not know at that time, but learned later, that upon selecting the appropriate button to leave the meeting, the video call failed to close as intended by M. Tincher.

37. Consequently, M. Tincher without knowing it had failed to exit the meeting as intended, and consequently the video conferencing software continued to record.

38. M. Tincher, upon leaving the room where her computer was located, and entering her private bedroom, deposited the aforementioned electronic device wirelessly connected to her computer, upon Plaintiffs' bed.

39. By this point, the meeting had been concluded for at least fifteen minutes. M. Tincher then began a conversation with her husband, Plaintiff K. Tincher, while remaining in the Plaintiffs' private bedroom.

40. Specifically, the Plaintiffs discussed M. Tincher's work, and the statements made by Defendant Smith, which M. Tincher viewed as badgering, abusive, inappropriate, and false.

41. Unknown to either Plaintiffs, Defendants Maksian and Smith had also left their end of the video call, connected to Plaintiffs' computer and were monitoring the Plaintiffs' conversation, which was still open on the M. Tincher's computer.

42. Defendants Makasian and Smith did not terminate the video call, despite the fact that all business had been concluded and the meeting had ended.

43. Defendants Makasian and Smith did not mute M. Tincher's microphone via the video conferencing software, despite the fact that all business had been concluded, the meeting had ended, and M. Tincher as well as all other participants had clearly signaled that M. Tincher was

leaving the meeting by exiting the room.

44. Defendants Makasian and Smith intentionally did not terminate the video call or mute M. Tincher's microphone via the video conferencing software, despite the fact that M. Tincher had plainly entered into a private conversation with her husband K. Tincher

45. K. Tincher is not a SkyWest employee.

46. Unknown to both Plaintiffs, Makasian and Smith continued recording via the video conferencing software, and specifically recording the Plaintiffs' interspousal conversation in Plaintiffs' private bedroom.

47. Defendants Makasian and Smith were not invited parties to Plaintiffs' conversation.

48. Defendants Makasian and Smith were not intended to eve be privy to Plaintiff's interspousal communication.

49. Defendants Makasian and Smith were not given consent in any form, or by any person, to record Plaintiffs' private conversations.

50. The Plaintiffs reasonably, and appropriately, expected total privacy in the Plaintiffs' bedroom located in Plaintiffs' own home, during an interspousal communication.

51. Defendants Makasian and Smith, together with every other Defendant who subsequently heard or saw the recording, had adequate notice that the Plaintiffs' conversation was private , should not have been recorded, monitored, replayed, or listened to further, and was unauthorized.

52. Defendants Makasian and Smith knew that all business of the Teams meeting had ended because they were the sky west employees that concluded the meeting and dismissed those in attendance.

53. Defendants Makasian and Smith also knew that M. Tincher had left the room where her

computer was.

54. Further Defendants Makasian and Smith also knew Plaintiffs were engaged in a private conversation.

55. Defendants Makasian and Smith also knew that they were not invited to participate in Plaintiffs' conversation.

56. Defendants Makasian and Smith knew that the Plaintiffs, and particularly Plaintiff K. Tincher, had never consented to allow Makasian and Smith to listen to Plaintiffs' private conversation.

57. Defendants Makasian and Smith intentionally, purposefully, and actively continued recording Plaintiff's conversation

58. Following the events of the Teams meeting held October 11, 2022, M. Tincher lodged a grievance with SkyWest Human Resources, concerning the conduct of Defendants Smith and Makasian during the Teams meeting.

59. At the time Plaintiff's did not know they had been recorded.

60. Thereafter, and upon information and belief, Defendants Smith, in retaliation for M. Tincher's filing of a grievance with SkyWest Human Resources, lodged a complaint with SkyWest regarding Plaintiffs' private conversation.

61. Moreover, one or more Defendants, including but not limited to Defendant Smith, provided the illegal recording to additional SkyWest personnel, management, and supervisor.

62. On or about October 21, 2022, and as a result of Defendant Smiht's actions described above, Defendant Riley terminated M. Tincher from her position as an InFlight Lead Instructor.

63. Moreover, Defendant Riley, participating with Defendant Smith on a telephone call with

M. Tincher, called M. Tincher "an embarrassment to the program" and "totally incompetent."

64. On or about February 23, 2023, Defendant Makasian spoke with M. Tincher by telephone and informed M. Tincher that SkyWest was terminating Plaintiff's employment.

65. M. Tincher administratively appealed SkyWest's termination of her employment.

66. During the initial appeal hearing, M. Tincher was informed that SkyWest's "only reason" for the termination of M. Tincher's employment was the illegally recorded conversation between Plaintiffs.

67. This stated basis was repeated several times as the sole and exclusive reason for M. Tincher's termination.

68. During the final appeal hearing, M. Tincher presented the controlling law, detailed herein, demonstrating that the recording of Plaintiffs' private conversation was illegal.

69. Notwithstanding SkyWest's fully informed knowledge of the applicable law, SkyWest denied M. Tincher's administrative appeal and terminated M. Tincher's employment on the sole basis of the illegal recording.

### FIRST CAUSE OF ACTION
#### (UNLAWFUL INTERCEPTION AS TO DEFENDANTS MAKASIAN AND SMITH)

70. Plaintiffs hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

71. Utah Code § 77-23a-11(1) provides in relevant part:

> Except under Subsections 77-23a-4(3), (4), and (5), a person whose wire, electronic, or oral communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover relief as appropriate from the person or entity that engaged in the violation.

72. The cited subsections (3), (4) and (5) pertain to providers of wire or electronic

communications service. None of the Defendants is a provider of wire or electronic communications service.

73. Utah Code Ann. § 77-23a-4(1) provides:

Except as otherwise specifically provided in this chapter, any person who violates Subsection (1)(b) is guilty of an offense and is subject to punishment under Subsection (10), or when applicable, the person is subject to civil action under Subsection (11).

(b)     A person commits a violation of this subsection who:

(i)     **intentionally or knowingly intercepts**, endeavors to intercept, or procures any other person to intercept or endeavor to intercept **any** wire, electronic, or **oral communication**;

(ii)     **intentionally or knowingly uses**, endeavors to use, or procures any other person to use or endeavor to use **any electronic**, mechanical, or other **device to intercept any oral communication**, when the device is affixed to, or otherwise transmits a signal through a wire, cable, or other like connection used in wire communication or when the device transmits communications by radio, or interferes with the transmission of the communication;

(iii)     **intentionally or knowingly discloses** or endeavors to disclose **to any other person the contents of any** wire, electronic, or **oral communication**, knowing or having reason to know that the information was obtained through the interception of a wire, electronic, or oral communication in violation of this section; or

(iv)     **intentionally or knowingly uses** or endeavors to use **the contents of any** wire, electronic, or **oral communication**, knowing or having reason to know that the information was obtained through the interception of a wire, electronic, or oral communication in violation of this section.

74. Defendants Makasian and Smith intentionally, and knowingly, intercepted Plaintiffs' private oral communication.

75. Defendants Makasian and Smith intentionally, and knowingly, used electronic means, namely, the video conferencing software, and the applicable recording service, to intercept Plaintiffs' oral communications.

76. The conduct of Defendants Makasian and Smith has caused actual damages to the Plaintiff, in an amount to be determined at trial, but estimated to be not less than $700,000, including but not limited to lost wages, lost benefits, out of pocket expenses, pain, suffering, mental anguish, and humiliation.

77. Pursuant to Utah Code § 77-23a-11, Plaintiff M. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, estimated as to M. Tincher to be not less than $700,000, or (b) statutory damages in the amount of $10,000.

78. Pursuant to Utah Code § 77-23a-11, Plaintiff K. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, or (b) statutory damages in the amount of $10,000.

79. Further, Pursuant to Utah Code § 77-23a-11(2), Plaintiffs are entitled to:

    a. Preliminary and other equitable or declaratory relief as appropriate, including the reinstatement of M. Tincher's employment;

    b. Punitive damages in an amount to be determined at trial, but estimated in an amount not less than six (6) times the total of all of Plaintiffs' actual damages, or $4,200,000;

    c. Reasonable attorney's fees and reasonably incurred litigation costs.

80. In support of Plaintiffs' claim for punitive damages:

    a. The nature of the alleged misconduct is also a third-degree felony. *See* Utah Code § 77-23a-4(10);

    b. The effect upon the life of the Plaintiff M. Tincher has been the complete deprivation of M. Tincher's employment after many years of service to SkyWest;

c.  The relationship of Defendants Makasian and Smith to the Plaintiff M. Tincher is of a supervisory nature, in that both Defendants exercised authority over M. Tincher in the scope of their employment.

### SECOND CAUSE OF ACTION
#### (UNLAWFUL DISCLOSURE AND USE OF UNLAWFULLY INTERCEPTED COMMUNICATION AS TO DEFENDANTS MAKASIAN, SMITH, RILEY AND NELSON)

81. Plaintiffs hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

82. One or more Defendants, including but not limited to Defendants Makasian, Smith, Riley and Nelson, knowingly used and disclosed the contents of Plaintiffs' private oral communications, to SkyWest, while knowing or having reason to know that the information was obtained through the illegal electronic interception of Plaintiffs' oral communications.

83. Specifically, one or more Defendants, including but not limited to Defendants Makasian and Smith, disclosed the contents of Plaintiff's private communication to other SkyWest employees, managers, and/or supervisors.

84. Defendant Nelson specifically made statements to other SkyWest employees, with words to the effect that Defendant Nelson was a part of having Plaintiff M. Tincher fired from SkyWest.

85. One or more Defendants, including but not limited to Defendants Riley and Nelson, then used the illegal recording to seek the termination of M. Tincher's employment of SkyWest.

86. Defendant Riley relied upon the illegal recording to fire M. Tincher from her responsibilities as an InFlight Lead Instructor.

87. Defendant Makasian relied upon the illegal recording to terminate M. Tincher's employment with Defendant SkyWest.

11

88. The conduct of Defendants Makasian, Smith, Riley and Nelson caused actual damages to the Plaintiff M. Tincher, in an amount to be determined at trial, but estimated to be not less than $700,000, including but not limited to lost wages, lost benefits, out of pocket expenses, pain, suffering, mental anguish, and humiliation.

89. Pursuant to Utah Code § 77-23a-11, Plaintiff M. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, estimated to be not less than $700,000, or (b) statutory damages in the amount of $10,000.

90. Pursuant to Utah Code § 77-23a-11, Plaintiff K. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, or (b) statutory damages in the amount of $10,000.

91. Further, Pursuant to Utah Code § 77-23a-11(2), Plaintiffs are entitled to Preliminary and other equitable or declaratory relief as appropriate, including the reinstatement of Plaintiff M. Tincher's employment.

92. Plaintiffs are entitled to, and seek, punitive damages against Defendants Makasian, Smith and Riley, jointly and severally, in an amount to be determined at trial, but estimated in an amount not less than six (6) times the total of all of Plaintiffs' actual damages, or $4,200,000. In support of Plaintiffs' claim for punitive damages as to these Defendants:

   a. The nature of the alleged misconduct is also third-degree felony. *See* Utah Code § 77-23a-4(10);

   b. The effect upon the life of the Plaintiff M. Tincher has been the complete deprivation of Plaintiff M. Tincher's employment after many years of service to SkyWest;

    c. The relationship of Defendants Makasian, Smith, and Riley to the Plaintiff M. Tincher is of a supervisory nature, in that these Defendants exercised authority over Plaintiff M. Tincher in the scope of their employment.

93. Plaintiffs are entitled to, and seek, punitive damages against Defendant Nelson in an amount to be determined at trial, but estimated in an amount not less than five (5) times the total of all of Plaintiffs' actual damages, or $3,500,000. In support of Plaintiffs' claim for punitive damages as to this Defendant:

    a. The nature of the alleged misconduct is also third-degree felony. *See* Utah Code § 77-23a-4(10);

    b. The effect upon the life of the Plaintiff M. Tincher has been the complete deprivation of Plaintiff M. Tincher's employment after many years of service to SkyWest;

94. Plaintiffs are also entitled to and seeks an award of reasonable attorney's fees and costs associated with this cause of action.

**THIRD CAUSE OF ACTION**
**(UNLAWFUL USE OF UNLAWFULLY INTERCEPTED COMMUNICATION**
**AS TO SKYWEST)**

95. Plaintiffs hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

96. SkyWest openly admits that it relied upon the illegal recording of Plaintiffs' conversation as the "sole" basis for the termination of Plaintiff M. Tincher's employment.

97. SkyWest continued to rely upon the illegal recording of Plaintiffs' conversation in denying Plaintiff M. Tincher's administrative appeal of SkyWest's termination decision, even after Plaintiff

M. Tincher demonstrated to SkyWest that the recording was illegally obtained in violation of specific Utah law.

98. Moreover, SkyWest's conduct demonstrates reckless disregard to the rights of Plaintiff. K. Tincher, who was not a SkyWest employee at the time of the illegal recording by SkyWest employees.

99. The conduct of SkyWest caused actual damages to the Plaintiffs, in an amount to be determined at trial, but estimated as to M. Tincher to be not less than $700,000, including but not limited to lost wages, lost benefits, out of pocket expenses, pain, suffering, mental anguish, and humiliation.

100.    Pursuant to Utah Code § 77-23a-11, Plaintiff M. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, estimated to be not less than $700,000, or (b) statutory damages in the amount of $10,000.

101.    Pursuant to Utah Code § 77-23a-11, Plaintiff K. Tincher is entitled to the greater of (a) actual damages in an amount to be proven at trial, or (b) statutory damages in the amount of $10,000.

102.    Further, Pursuant to Utah Code § 77-23a-11(2), Plaintiffs are entitled to:

    a.  Preliminary and other equitable or declaratory relief as appropriate, including the reinstatement of Plaintiff M. Tincher's employment;

    b.  Punitive damages in an amount to be determined at trial, but estimated in an amount not less than seven (7) times the total of all of Plaintiffs' actual damages, or $4,900,000;

    c.  Reasonable attorney's fees and reasonably incurred litigation costs.

103.   In support of Plaintiffs' claim for punitive damages:

d. The nature of the alleged misconduct constitutes a third-degree felony. *See* Utah Code § 77-23a-4(10);

e. The effect upon the life of the Plaintiff has been the complete deprivation of Plaintiff M. Tincher's employment after many years of service to SkyWest;

f. The relationship of Defendant SkyWest to the Plaintiff M. Tincher was that of employer and employee.

g. The wealth of Defendant SkyWest is significant. Upon information and belief, as of August 10, 2023, stock shares in Defendant SkyWest held a fair market value of $43.18 per share, with approximately 42,060,000 shares outstanding. The calculated value of SkyWest is therefore $1,816,150,800.

//

**FOURTH CAUSE OF ACTION**
**(WRONGFUL TERMINATION AS TO DEFENDANT SKYWEST)**

104.   Plaintiffs hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

105.   The required elements of a claim for wrongful termination under Utah law are: "(i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected, i.e., that the conduct bringing the public policy into play was *a* cause of the firing."[1]

---

[1] Medina v. Jeff Dumas Concrete Constr. LLC, 2020 UT App 166, P14, 479 P.3d 1116, 1121, 2020 Utah App. LEXIS 169, *8-9, 2020 WL 7393257 (Utah Ct. App. 2020) (internal quotations and citations omitted, italics in original).

106.     SkyWest was Plaintiff M. Tincher's employer.

107.     SkyWest terminated M. Tincher's employment.

108.     Utah Code Ann. § 77-23a-4, and similar state and federal law, demonstrate a clear and substantial public policy protecting M. Tincher's right to privacy in her conversations with her spouse, in her own home, and in her own bedroom.

109.     Furthermore, Utah Code Ann. § 77-23a-4 expressly prohibits Defendant SkyWest's actions of disclosing and using the recording of the M. Tincher's illegally intercepted conversion.

110.     Plaintiff M. Tincher's conduct brought the aforementioned public policy into play. Specifically, Plaintiff M. Tincher attempted to exit the video conference, left the room where her computer was located with the belief that she had left the video conference and was no longer being viewed or heard by any agents or employees of SkyWest, entered a private bedroom, and engaged in a conversation with her spouse, for which she had a more than reasonable expectation of privacy.

111.     Plaintiff M. Tincher's discharge and Plaintiff M. Tincher's conduct bringing the public policy into play are causally connected. Specifically, Defendant SkyWest's reliance upon the illegally obtained recording as the basis of Plaintiff M. Tincher's termination was only made possible by SkyWest engaging in the *felony* act of using the illicit recording.

112.     As the direct and proximate result of Defendant SkyWest's wrongful termination of Plaintiff M. Tincher, Plaintiff M. Tincher has suffered actual damages in an amount to be proven at trial, but estimated to be not less than $700,000, including but not limited to lost

16

wages, lost benefits, out of pocket expenses, pain, suffering, mental anguish, and humiliation.

113.    Accordingly, Plaintiff M. Tincher is entitled to reinstatement to her employment, with all back pay and benefits.

114.    Alternatively, Plaintiff M. Tincher is entitled to an award of damages in an amount to be proven at trial, but estimated to be not less than $700,000.

115.    Further, Plaintiff M. Tincher seeks an award of punitive damages as to this claim, and hereby restates and realleges all previously stated grounds for such an award, in an amount not less than seven (7) times the total of all of Plaintiff's actual damages, or $4,900,000.

### FIFTH CAUSE OF ACTION
### (DEFAMATION AS TO DEFENDANTS MAKASIAN AND NELSON)

116.    Plaintiff hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

117.    Defendants Makasian and Nelson published statements concerning Plaintiff M. Tincher, as referenced previously herein.

118.    The statements were published orally.

119.    Upon information and belief, additional similar statements not in the Plaintiffs' possession or control were published orally and/or in print.

120.    The statements published by the Defendants concerning Plaintiff M. Tincher were false.

121.    The statements published by the Defendants concerning Plaintiff M. Tincher were defamatory, in that they impeached M. Tincher's reputation, and thereby exposed M. Tincher to public hatred, contempt or ridicule by fellow SkyWest employees.

17

122.     As the direct and proximate result of the Defendants' conduct, M. Tincher suffered damages in an amount to be proven at trial, but estimated in an amount not less than $700,000.

123.     Further, Plaintiff M. Tincher seeks punitive damages as to this claim, and hereby incorporate all amounts and facts previously stated in support of such award as to these respective Defendants.

### SIXTH CAUSE OF ACTION
### (INTENTIONAL INTERFERENCE WITH EXISTING ECONOMIC RELATIONS AS TO DEFENDANTS MAKASIAN, SMITH, RILEY AND NELSON)

124.     Plaintiffs hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

125.     To establish intentional interference with economic relations, a plaintiff must show that: (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) the interference was done by improper means, and; (3) the interference caused injury to the Plaintiff.[2]

126.     Defendants Makasian, Smith, Riley and Nelson intentionally interfered with Plaintiff M. Tincher's existing economic relations by illegally disclosing and using the contents of Plaintiff's private communication to SkyWest.

127.     Defendants' interference was done by improper means of unlawful conduct. Specifically, the disclosure and use of the illegal recording by Defendants constitutes a third-degree felony pursuant to the statutory authority previously cited herein.

128.     As the direct and proximate result of Defendants' conduct, Plaintiff M. Tincher has suffered actual damages in an amount to be proven at trial, but estimated to be not less than

---

[2] *Brown v. Peterson*, 2004 Utah App. LEXIS 499, *4, 2004 UT App 439 (Utah App. 2004).

18

$700,000, including but not limited to lost wages, lost benefits, out of pocket expenses, pain, suffering, mental anguish, and humiliation.

129.    Further, Plaintiff seeks an award of punitive damages as to this claim, and hereby restates and realleges all previously stated grounds for such an award, in an amount not less than six (6) times the total of all of Plaintiff's actual damages, or $4,200,000.

### SIXTH CAUSE OF ACTION

### (VIOLATION OF AMERICANS WITH DISABILITIES ACT)

130.    Plaintiff hereby incorporate all prior statements of law and fact previously made as though fully set forth herein.

131.    Defendant SkyWest is subject to the Americans with Disabilities Act ("ADA").

132.    Plaintiff Mary Tincher is disabled as defined by ADA. Specifically, the Plaintiff suffers from Attention-Deficit Hyperactivity Disorder and dyslexia.

133.    The Plaintiff has a record of her disabled condition. Specifically, the Plaintiff was diagnosed in childhood, and participated in specialized curriculum programs to accommodate her disability.

134.    The Plaintiff is able to perform essential functions of her work for SkyWest, with reasonable accommodation.

135.    SkyWest took an adverse employment action against the Plaintiff because of, in whole or in part, the Plaintiff's protected disability, and offered no accommodations there for despite Plaintiff M. Tincher's request.

136.    Accordingly, Plaintiff M. Tincher is entitled to judgement against Defendant SkyWest for violation of the ADA, for declaratory and/or injunctive relief, and for all damages

19

permitted by rule statute or otherwise, including but not limited to the total amount of damages claimed herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

(a) For a money judgment in favor of Plaintiff M. Tincher against all Defendants, jointly and severally, for actual and consequential damages, lost wages, lost benefits, out of pocket expenses, pain, suffering, and humiliation, in an amount to be proven at trial, but estimated in an amount not less than $700,000, or for the statutory minimum of $10,000, whichever is greater;

(b) For a money judgment in favor of Plaintiff K. Tincher against all Defendants, jointly and severally, for actual and consequential damages, lost wages, lost benefits, out of pocket expenses, pain, suffering, and humiliation, in an amount to be proven at trial, or for the statutory minimum of $10,000, whichever is greater;

(c) For reinstatement of Plaintiff M. Tincher's employment with Defendant SkyWest;

(d) For punitive damages jointly and severally against Defendants Makasian, Smith and Riley in an amount to be proven at trial, but estimated in an amount not less than six (6) times all other damages proven against these Defendants, or $4,200,000;

(e) For punitive damages against Defendant Nelson in an amount to be proven at trial, but estimated in an amount not less than five (5) times all other damages proven against this Defendant, or $3,500,000;

(f) For punitive damages against Defendant SkyWest in an amount to be proven at trial, but estimated in an amount not less than seven (7) times all other damages proven against this

Defendant, or $4,900,000;

(g) For an award of reasonable attorney's fees jointly and severally against all Defendants, pursuant to statute as cited herein, pursuant to any other applicable rule or statute which may be disclosed in discovery, and/or pursuant to equitable grounds as may be demonstrated in the course of the litigation;

(h) For any and all other relief, by rule or statute, just or equitable, which this Court may find proper, or which may be proven by the development of the evidence in discovery or at trial.

SIGNED and DATED this 1st day of September 2023.

**HEIDEMAN & ASSOCIATES**

*Justin D. Heideman*
JUSTIN D. HEIDEMAN
*Attorneys for Plaintiffs*